# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2349

_____

Christopher White

*Petitioner - Appellant*

v.

Troy Steele

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 9, 2017
Filed: April 6, 2017

_____

Before RILEY, Chief Judge,[1] GRUENDER, Circuit Judge, and SCHREIER,[2]
District Judge.

_____

GRUENDER, Circuit Judge.

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

[2]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

Christopher White was convicted of first-degree murder, armed criminal action, and first-degree assault following a jury trial in Missouri state court. White petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, arguing that the State failed to disclose that a key prosecution witness received favorable consideration in exchange for his testimony. The district court[3] denied White's petition, and we affirm.

## I.

On the morning of June 21, 2002, three men with guns approached the house of Freddie Chew. Chew drew his gun and fired one shot at the men. In response, the men shot and killed Chew. Jeffrey Shockley, a friend of Chew who was present at the scene, later identified White as one of the shooters.

Shockley testified at White's trial in January 2004. At the time, Shockley had state felony charges pending against him for possession of cocaine and unlawful use of a weapon. On cross-examination, Shockley admitted that these state charges were pending. On re-direct, he testified that he had not received a deal from the State and did not expect to "get anything" in exchange for his testimony. The jury found White guilty of all charges, and he was sentenced to life without parole. Later, Shockley pleaded guilty to his state felony charges and received a suspended imposition of sentence and one year of unsupervised probation.

On direct appeal, White argued that a delay in his prosecution violated his right to a speedy trial, that the trial court erred in overruling his objections to the jury instructions, and that the trial court erred in preventing defense counsel from cross-examining Shockley about whether he was returning to his house to obtain drugs to

---

[3]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

sell. The Missouri Court of Appeals affirmed White's conviction. White then filed a motion for state post-conviction relief with the Missouri trial court under Missouri Supreme Court Rule 29.15, alleging ineffective assistance of counsel. The trial court denied the motion, and the Missouri Court of Appeals affirmed.

In February 2008, White filed a federal habeas petition, reasserting the four grounds for relief previously raised in the state courts. After White filed his habeas petition, one of his fellow prisoners, Darryl Smallwood, provided him with an internal public defender conflict-of-interest form regarding his co-defendant, Juane Kennell. Kennell's counsel had written on the form that he "learned that [Shockley's counsel] has negotiated a deal for Jeff Shockley to testify against [Kennell] . . . as well as possibly another defendant, Christopher White." White's counsel then obtained Shockley's guilty plea transcript, which did not mention a plea agreement but which revealed that the State had paid to relocate Shockley from his neighborhood.

On the basis of the conflict-of-interest form and the guilty plea transcript, White amended his habeas petition in September 2009. He added a claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the existence of a deal with Shockley, and he added a claim that the State violated *Napue v. Illinois*, 360 U.S. 264 (1959), by failing to correct Shockley's testimony that he did not receive a deal. White also maintained his speedy trial and ineffective assistance claims but abandoned his other two claims. By affidavit, White asserted that he had received the conflict-of-interest form in January 2009.

The district court held that White's *Brady* and *Napue* claims were not time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because they were brought within one year of January 2009, which the court determined was "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28

U.S.C. § 2244(d)(1)(D). Nevertheless, the district court denied White's amended petition, holding that all of White's claims failed on the merits.

White timely filed a motion to alter or amend the judgment, contending that his habeas petition was denied before he had completed discovery on his *Brady* claim. As a result, the district court granted White an evidentiary hearing. During the hearing, White and Smallwood both mentioned that Smallwood had given the conflict-of-interest form to White in 2007 or 2008. Shockley's former defense counsel, Robert Taaffe, testified that he never obtained a plea agreement for Shockley and that there was no "secret deal." Rather, he explained that around the time the conflict-of-interest form was dated, the State had made an offer to Shockley, but Shockley declined the offer because it required him to testify against his brother in another case.[4] Nevertheless, based on his notes from the time he represented Shockley, Taaffe suggested that the prosecutor in White's case "hinted at a nolle," meaning that the charges would be dismissed. The prosecutor also testified and unequivocally denied making any such hint.

After the hearing, the State disclosed expense records showing that, in 2002, the St. Louis Circuit Attorney's Victim Services Unit had paid for Shockley to stay at a hotel for one week and later paid him just over $1,000 to help him relocate to an apartment in another neighborhood. Despite this additional evidence, the district court denied White's motion to alter or amend the judgment. Once again, the court held that White's *Brady* and *Napue* claims failed on the merits, but it issued a certificate of appealability on the two claims.

_____

[4]Shockley admitted that at some point he agreed to testify against his brother, but he denied that he did so in order to receive favorable treatment on his own charges.

## II.

On appeal, White argues that the district court erred in denying his *Brady* and *Napue* claims. The State responds that White's claims are time-barred, procedurally defaulted, and without merit. "On appeal of a district court's denial of a § 2254 petition, we review the district court's findings of fact for clear error and its conclusions of law de novo." *Wright v. Bowersox*, 720 F.3d 979, 983 (8th Cir. 2013).

## A.

The State first argues that White's *Brady* and *Napue* claims are barred by AEDPA's one-year statute of limitations. That provision requires a habeas petitioner to raise claims within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). White raised his *Brady* and *Napue* claims in his amended petition in September 2009, and the district court held that the petition was timely because it found that White discovered the conflict-of-interest form in January 2009. It based this finding on White's affidavit stating that he received the form in January 2009.

The State contends that White's affidavit is refuted by the subsequent evidentiary hearing, in which he and Smallwood both testified that White received the form in either 2007 or 2008. However, these statements alone do not prove that the district court's finding was clearly erroneous. Neither White nor Smallwood remembered the exact date that White received the form. In fact, White also testified that he received it after he filed his original habeas petition. Because he filed that petition on February 29, 2008, this means he could not have received the form in 2007. Moreover, as the State acknowledges, Smallwood's testimony was inconsistent, and he admitted to lying about who gave him the form.

-5-

At most, it is unclear when White received the form. But even where we have reason to doubt compliance with the statute of limitations, we may proceed to the merits in the interest of judicial economy. *See Shelton v. Purkett*, 563 F.3d 404, 407 (8th Cir. 2009) ("[I]nstead of remanding for further development of the non-jurisdictional statute of limitations defense, we proceed directly to the merits of Shelton's habeas corpus petition."); *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006) (holding that even though "[i]t is doubtful that Trussell filed his petition within the one-year limitations period . . . we shall, in the interest of judicial economy, proceed to the merits of Trussell's petition"). Accordingly, we proceed to address the merits of White's claims.[5]

## B.

"Under *Brady v. Maryland*, 'suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *United States v. Pendleton*, 832 F.3d 934, 940 (8th Cir. 2016) (quoting *Brady*, 373 U.S. at 87). "[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Keys*, 721 F.3d 512, 520 (8th Cir. 2013) (quotations omitted). "A reasonable probability of a different result is shown when the government's failure to disclose undermines confidence in the outcome of the

---

[5]Likewise, although the State argues that White's claims have been procedurally defaulted, we decline to address this issue. *See Dodge v. Robinson*, 625 F.3d 1014, 1017 n.1 (8th Cir. 2010) ("Since we can dispose of both claims on the merits, we do not address the issue of procedural default."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

trial." *United States v. Jeanpierre*, 636 F.3d 416, 423 (8th Cir. 2011) (citation omitted).

*Brady*'s disclosure mandate extends to "agreements or understandings between the government and a witness for leniency in exchange for testimony." *United States v. Rushing*, 388 F.3d 1153, 1158 (8th Cir. 2004) (citing *Giglio v. United States*, 405 U.S. 150, 154-55 (1972)). And, under *Napue v. Illinois*, "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *Napue*, 360 U.S. at 269.

1.

The district court found "from a review of the evidence, and after having an opportunity to observe the demeanor of the witnesses at the habeas hearing, that no formal or tacit agreement existed between the state and Shockley." Nothing in the record suggests that this factual finding was clearly erroneous.

At the evidentiary hearing, Kennell's counsel testified that the notation he made on his conflict-of-interest form may have meant only that Taaffe told him "we're trying to negotiate a plea agreement." Taaffe verified that he did try to negotiate a plea agreement and that Shockley received a plea offer. However, Shockley rejected the offer, and we do "not require disclosure of rejected plea offers; the duty to disclose is dependent upon the existence of an agreement between the witness and the government." *Rushing*, 388 F.3d at 1158.

In addition, although Taaffe testified that the prosecutor "hinted at a nolle," he clarified that he did not believe that a "secret deal" existed. The prosecutor steadfastly denied making any such hint, and the court found his testimony credible. Moreover, there was no "nolle." The prosecution did not dismiss the charges after Shockley testified at White's trial, and Taaffe did not mention any contrary

-7-

understanding at sentencing. Rather, Taaffe stressed to the sentencing judge that there was "no agreement" and "no quid pro quo" in exchange for Shockley's testimony against White.

White also points out that Shockley reached an agreement with the State to testify against his brother in an unrelated case, and he argues that the jury should have heard about this agreement because it would demonstrate Shockley's willingness to make any deal to stay out of prison. However, there is no evidence regarding any of the terms of this agreement. During the evidentiary hearing, Shockley admitted that he agreed to testify against his brother, but he denied that he did so in order to receive anything in return. Rather, he insisted that his brother had instructed him to testify.

In sum, the district court did not clearly err in finding that Shockley received no hint, deal, or agreement promising favorable consideration in exchange for his testimony against either White or his brother. Without any such agreement, there is nothing that the State could have suppressed. As a result, the State also could not have knowingly used false testimony, because Shockley's testimony that he did not receive a deal or expect to "get anything" was not false. Indeed, without a hint or deal, even if Shockley did expect to get something, the State could not have known of Shockley's expectation. Accordingly, the State did not violate *Brady* or *Napue* by failing to disclose an agreement that did not exist.

2.

The district court assumed that the financial assistance provided to Shockley for staying in a hotel for one week and relocating to another apartment was *Brady* material that should have been disclosed. Likewise, we assume without deciding that this financial assistance was subject to *Brady*'s disclosure mandate. Nevertheless, the failure to disclose this financial assistance did not violate *Brady* because it does not undermine confidence in the verdict.

-8-

At the evidentiary hearing, Shockley explained that the police moved him to the hotel because he had been receiving threats. He also testified that he received food vouchers but that he did not know who paid for either the hotel or the vouchers and that he never received cash or anything else of value. The assistance with relocating to a new apartment was not discussed at the evidentiary hearing, but at Shockley's sentencing, Taaffe explained to the sentencing judge that "[h]is life has been threatened" and that the State "moved him" so that "he's out of that element."

White contends that we found a *Brady* violation in similar circumstances in *United States v. Librach*, but that case involved cash payments that provided the witness with an incentive to testify. *See* 520 F.2d 550, 554 (8th Cir. 1975) ("We have no doubt that evidence of payments of nearly $10,000 to a witness in circumstances providing him an incentive to change his testimony is favorable and material to the defense . . . ."). Here, there is no evidence that this financial assistance provided Shockley with an incentive to testify. Rather than cash, Shockley received a hotel stay, food vouchers, and assistance moving out of a neighborhood where he was receiving threats. Shockley received this assistance in 2002, and White's trial did not occur until January 2004. Furthermore, Shockley testified that he did not know who paid for this assistance and that, in any case, he was motivated to testify in order to get "revenge" for his friend Chew's death.

Moreover, as the district court noted, disclosure of this assistance actually could have hurt White's defense at trial. Specifically, evidence that Shockley received threats could have invited testimony or speculation by the jury that White had urged individuals to harm Shockley to prevent him from testifying. Under these circumstances, we detect no error in the district court's conclusion that this nondisclosure does not undermine confidence in the verdict. Accordingly, the State did not violate *Brady* by failing to disclose this financial assistance.

## III.

For the foregoing reasons, we affirm the denial of White's petition for habeas corpus.

_____