# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2887

_____

Juane T. Kennell

*Petitioner - Appellant*

v.

Dave Dormire

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 20, 2017
Filed: October 17, 2017

_____

Before LOKEN, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Some years ago, three men armed with guns stopped near the house of one Freddie Chew where Chew, Jeffrey Shockley, and Robert Stewart were gathered. A shootout erupted, resulting in Chew's death. Shockley and Stewart escaped and later identified Juane Kennell and Christopher White as two of the three attackers. Kennell and White were tried separately in Missouri state court on charges of first-degree

murder, first-degree assault, and armed criminal action, and both were convicted, thanks in large part, probably, to testimony from Shockley and Stewart. After the Missouri state courts upheld their convictions on direct and collateral review, Kennell and White separately petitioned for habeas corpus relief in federal court under 28 U.S.C. § 2254. They each asserted, as relevant here, that the prosecution did not disclose material exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court,[1] following a joint evidentiary hearing, denied both petitions. Kennell now appeals the denial of his § 2254 petition and a motion to reconsider the same, and we affirm.

When reviewing a district court's denial of a § 2254 petition, we review the district court's findings of fact for clear error and its conclusions of law de novo. *White v. Steele*, 853 F.3d 486, 489 (8th Cir. 2017). There are three components to a *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory or has impeachment value; the state must have suppressed the evidence, either willfully or inadvertently; and prejudice must have resulted. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice results if the suppressed evidence is material, which for *Brady* purposes occurs "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different," or in other words, when the evidence "undermines confidence in the outcome of the trial." *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017).

Kennell first argues that the state violated *Brady* when it withheld evidence of an agreement between the state and Shockley requiring Shockley to testify against Kennell and White in exchange for leniency on pending drug and weapons charges that Shockley was facing. As evidence of this agreement, Kennell produced an internal public-defender form supposedly drafted by Kennell's first counsel, who

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

noted that he had learned that Shockley's counsel had "negotiated a deal for Jeff Shockley to testify against [Kennell] . . . as well as possibly another defendant, Christopher White." Kennell also relies on notes drafted by Shockley's counsel regarding a meeting that he had with the prosecutor that stated that the prosecutor had hinted at a "nolle," or dismissal, of charges. He also called the district court's attention to unsigned plea agreements or offers.

Kennell does not contend that Shockley and the state entered into a written agreement, and the district court found there was no oral agreement, either, tacit or otherwise. The district court credited the testimony of Kennell's first counsel and Shockley's counsel that the notation in the conflict form was simply incorrect, perhaps an erroneous conclusion based on negotiations to reach a deal that was never concluded. Shockley's counsel also represented to the sentencing court in Shockley's case that there existed no quid pro quo or secret deal for Shockley's testimony against Kennell and White; in fact, neither he nor Shockley mentioned any agreement at Shockley's sentencing. Shockley and the prosecutor in his case, moreover, testified that there was no agreement, and the district court explicitly found them both credible on that point. Both Shockley's attorney and the prosecutor also testified that Shockley would have likely received probation in any case as a matter of course in light of his youth and unremarkable criminal history. In addition, the state never dismissed the charges after Shockley testified against Kennell and White; and the state ultimately recommended that Shockley's sentence be essentially consistent with the sentence that it had proposed in its first plea offer to Shockley, which did not require his testimony against anyone. Finally, the court credited Shockley's and his attorney's testimony that they merely hoped that Shockley's cooperation would positively influence his sentence. On this abundant record, we cannot say that the district court clearly erred in finding that there was no agreement that the government could have failed to disclose. *Cf. White*, 853 F.3d at 491.

Kennell's second *Brady* argument is that the state should have disclosed that it had paid Shockley around two thousand dollars to put him up in a hotel for about a week and then to move him and his mother into a different apartment. The state made these relocation payments because Shockley represented that he felt in danger because of his connection to the crimes at issue. We agree with the district court and the *White* panel that, assuming this was *Brady* information that the state should have disclosed, its nondisclosure does not undermine confidence in the verdict. *See id.* at 491–92. The state made these payments more than a year before Kennell's trial, and nothing shows that they were made to encourage Shockley to change his testimony. *Cf. United States v. Librach*, 520 F.2d 550, 554 (8th Cir. 1975). And as the district court pointed out, the jury's consideration of this information could have harmed Kennell by inviting testimony or speculation that Shockley had been threatened.

Kennell next maintains that the state should have disclosed that Shockley had agreed to testify against his own brother in an unrelated case because it showed Shockley's willingness to testify against others to advance his personal interests. But as the district court found, on a sufficient record, there is no indication that Shockley was willing to testify against his brother to receive a benefit from the state. We therefore cannot say that the district court clearly erred in finding that no agreement with the state existed, so we discern no *Brady* violation here.

The next set of circumstances on which Kennell stakes his *Brady* claim involves the gun that Shockley used during the shootout. Shockley testified at Kennell's trial that he disposed of the gun on the day of the shootout and never retrieved it. In fact, though, about ten days after the shootout, police found the gun in a car that Shockley, then seventeen, was driving. Shockley and Stewart, who was also in the car, were charged with minor drug offenses as a result, while another passenger was charged with possessing the gun. Kennell argues that the state suppressed information relating to the recovery of Shockley's gun by the police, and, had he known about this information at trial, he could have impeached Shockley with

-4-

it. He also maintains that the state should have corrected Shockley's false testimony, and, since it did not, his conviction rested on fabricated evidence. The district court, after intimating that Kennell might have procedurally defaulted any claims involving Shockley's disposition of the gun by not raising them in his state proceedings, found against Kennell on the merits. We do not consider the merits because, even assuming that the certificate of appealability reaches claims of fabricated evidence, which is far from clear in this case, we are convinced that Kennell defaulted any claims that he may have had involving Shockley's testimony about the gun.

Though petitioners seeking habeas relief must fairly present the substance of their claims to the state court to avoid defaulting them, *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003), a showing of cause and prejudice can excuse a procedural default and open the door to our review. *Wooten v. Norris*, 578 F.3d 767, 777 (8th Cir. 2009). Cause typically turns on whether some objective circumstance external to the defense impeded counsel from raising the claim. *See Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007).

Kennell argues that cause exists here because he did not learn of the circumstances surrounding the recovery of the gun until his state proceedings had concluded. Although the district court stopped short of holding that Kennell procedurally defaulted his claims regarding the gun, it explicitly found, after a careful review of the record, that the state did not fail to disclose Shockley's arrest stemming from the car incident or the fact that the gun seized from the car incident had been used at the scene of the shootout. The district court based its finding on Kennell's admission in his state post-conviction proceedings that he had received in discovery a report documenting the arrest in which this type of gun was recovered, and on the prosecutor's credible testimony that he would have given the same discovery materials to Kennell as he did to White, and White's counsel had been advised of the incident. And after having the opportunity to observe Kennell's demeanor, the court found that Kennell was not credible when he said that he did not know about

Shockley's arrest or the seizure of the gun until after his state proceedings had ended. The court also found it telling that Kennell did not offer any affidavits or testimony by either of his trial counsel suggesting that the state had not provided this information. Kennell fails to convince us that the district court clearly erred in making these findings, especially when considering that findings based on witness credibility are virtually unassailable on appeal. *United States v. Wolff*, 830 F.3d 755, 759 (8th Cir. 2016). These findings make it clear that Kennell had the opportunity to raise his claims regarding Shockley's disposition of the gun in state court but failed, without cause, to do so. We therefore decline to address these claims further.

Kennell's final *Brady* argument is that the state suppressed evidence of agreements it had with Shockley and Stewart that they would testify against Kennell in exchange for leniency on the drug charges stemming from the stop of the car ten days after the shootout. The district court found, after reviewing the record and observing the demeanor of the witnesses, that no such agreements existed. The district court reviewed certain files in camera and determined that, within just a few days of the arrests, the state declined to prosecute Shockley because of a lack of "sufficient value" and Stewart because of an "insufficient connection." The district court concluded that Kennell had provided no evidence suggesting that the state's decision not to prosecute teenagers with insignificant criminal histories for possessing a small amount of drugs was unusual. We see no clear error with that conclusion, especially when we consider that the charges were dropped more than a year before Shockley or Stewart testified against Kennell at trial. Because Kennell has failed to show that the district court clearly erred in finding that no agreement existed, the state did not suppress any information in violation of *Brady*.

We also reject Kennell's argument that the district court failed to consider the cumulative effect of the suppression of *Brady* materials. Not only does this argument contradict the district court's express statements to the contrary, but there was only one arguable instance of the suppression of *Brady* material (the relocation payments),

and since the alleged suppression of that information does not undermine confidence in the verdict, Kennell's *Brady* claims necessarily fail.

Affirmed.

_____