# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 18-2600

———————————————

United States of America,

*Plaintiff - Appellee,*

v.

Orlando Dones-Vargas,

*Defendant - Appellant.*

——————————

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

——————————

Submitted: June 13, 2019
Filed: August 21, 2019

——————————

Before COLLOTON, KELLY, and ERICKSON, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

A jury convicted Orlando Dones-Vargas of two drug trafficking offenses, and the district court[1] sentenced him to 235 months' imprisonment. After trial, it came to light that the government had been unaware of payments that local police made to

———————————

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

a cooperating witness and thus had failed to disclose that information to the defense. Dones-Vargas moved for a new trial based on the nondisclosure, but the district court denied the motion, and Dones-Vargas appeals. We conclude that the undisclosed payments were not material to the outcome of the proceeding, and therefore affirm the judgment.

A grand jury charged Dones-Vargas with one count of conspiracy to distribute methamphetamine, and one count of possession with intent to distribute methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 846. The case proceeded to trial in January 2018.

Margaret Ghost, the defendant's ex-girlfriend, testified for the prosecution. Dones-Vargas is the father of Ghost's four children; the two had dated off and on for six years. Ghost testified that Dones-Vargas provided her with methamphetamine on a regular basis during that period. Ghost said that she had seen Dones-Vargas sell methamphetamine to approximately thirty people, in quantities of up to a pound at a time, and that she once observed Dones-Vargas possess four pounds of methamphetamine. She also explained that Dones-Vargas hid methamphetamine in a storage unit and a concealed compartment in one of his vehicles. According to Ghost, Dones-Vargas used three different cell phones and wired money out of the country on two separate occasions. On cross-examination, Ghost acknowledged, among other things, that she was serving a sentence for three state convictions, including one for drug possession.

Three other witnesses testified that they conducted methamphetamine transactions with Dones-Vargas. Law enforcement officers also presented evidence about drugs and cash found on Dones-Vargas's person when he was arrested. One officer recounted a post-arrest admission by the defendant that he had distributed methamphetamine. The jury found Dones-Vargas guilty on both counts.

After trial, Dones-Vargas's counsel learned from Ghost that she had received certain payments from the local police department before and after the trial. At a hearing on the matter, a police detective testified that he first paid Ghost $100 on November 1, 2017, for information she had provided since 2013 about more than ten different drug traffickers, including Dones-Vargas. He paid Ghost another $150 on November 8 for information that led to the arrest of a suspect unrelated to Dones-Vargas. The detective said that he also arranged for a $150 deposit into Ghost's prison account on January 31, 2018, the day after the trial concluded, for the provision of information unrelated to Dones-Vargas.

Dones-Vargas moved for a new trial on the ground that the government had violated its duty to disclose material information favorable to the defense, under the constitutional rule of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). The district court denied the motion, concluding that evidence of the payments to Ghost was not material to the outcome of the trial. Dones-Vargas appeals, and we review the district court's conclusion *de novo*. *United States v. Santisteban*, 501 F.3d 873, 879 (8th Cir. 2007).

The Due Process Clause of the Fifth Amendment requires the government to disclose to the accused favorable evidence that is material to guilt or punishment. *Brady*, 373 U.S. at 87. *Giglio* held that disclosure of evidence affecting the credibility of a witness falls within this rule. 405 U.S. at 154. To establish a due process violation, a defendant must show that the evidence in question was favorable to him, that the government suppressed the evidence, and that the evidence was material. *Santisteban*, 501 F.3d at 877. Evidence is material when there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (internal quotation omitted). There is a "reasonable probability" of a different result when the nondisclosure "undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Determining whether a failure to disclose impeachment evidence is "material" requires consideration of the record as a whole. The relative strengths of the prosecution's case and the impeachment value of the undisclosed evidence bear on whether disclosure in time for use at trial would have made a difference. On this record, we agree with the district court that the government's failure to disclose the three payments to Ghost does not undermine confidence in the verdict.

The prosecution's case did not hinge on Ghost's testimony. Several other witnesses implicated Dones-Vargas in a drug trafficking conspiracy. Jose Riveraperez testified that he purchased methamphetamine from Dones-Vargas on and off for about six years, and that Dones-Vargas was well known as a drug dealer. Riveraperez also recounted that he had seen Dones-Vargas with large amounts of cash, that Dones-Vargas owned multiple vehicles, and that Dones-Vargas had wired money out of the country. Blanca Luna-Soto and her boyfriend, Edras Chua-Lemus, each testified that she or he had sold methamphetamine to Dones-Vargas by the pound. An expert law enforcement officer testified that he had never seen a drug purchaser buy a pound of methamphetamine exclusively for personal use.

To support the substantive charge of possession with intent to distribute, as well as the conspiracy, police officers testified that Dones-Vargas possessed 13.7 grams of 96% pure methamphetamine on his person when he was arrested. An officer with training and experience in drug investigations explained that methamphetamine of that purity was consistent with methamphetamine produced in large batches in Mexico that is typically smuggled across the border and trafficked north to the local area. The officer testified that because methamphetamine users often use a half a gram or less at a time, the 13.7 grams found on Dones-Vargas were "much more likely a distribution amount." A different officer recounted Dones-Vargas's post-arrest admission that he sometimes gave methamphetamine to others, further supporting the inference that Dones-Vargas intended to distribute the drugs in his possession.

The impeachment value of the payment information was not so devastating as to undermine the entire prosecution. Police paid Ghost a total of $250 before trial, and $150 after the trial ended. In other cases, we have held that undisclosed payments of $2,000 from law enforcement to a witness were not material, where there was no evidence that the payments gave the witness an incentive to testify. *Kennell v. Dormire*, 873 F.3d 637, 639-40 (8th Cir. 2017); *White v. Steele*, 853 F.3d 486, 491-92 (8th Cir. 2017).

Dones-Vargas argues that even relatively small payments can mean a lot to a witness like Ghost who was strapped for cash. That may be true. But other than a modest circumstantial argument based on the timing of payments made within three months of the trial, there is little to suggest that the transactions gave Ghost an incentive to testify against Dones-Vargas. The first payment was for information that Ghost had provided over the course of four years about several drug dealers. The second payment was premised on information unrelated to Dones-Vargas. The third payment came after the trial was over, for more information unrelated to Dones-Vargas, and there was no showing that Ghost expected this payment as a reward for her testimony at trial.

Nondisclosure of the relatively small payments in these circumstances, when considered against the backdrop of a substantial prosecution case, does not undermine confidence in the jury's verdict. We therefore conclude that the impeachment evidence was not material, and Dones-Vargas has not established a violation of the Due Process Clause.

The judgment of the district court is affirmed.

_____