# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-2946

_____

United States of America

*Plaintiff - Appellee*

v.

Jack Albert Chappell

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: October 21, 2020
Filed: March 10, 2021

_____

Before COLLOTON, GRASZ, and STRAS, Circuit Judges.

_____

GRASZ, Circuit Judge.

Jack Albert Chappell appeals the district court's[1] denial of his request for a new trial based on newly discovered evidence, a related *Brady* challenge, and his request for a lighter sentence. We affirm.

## I. Background

After a four-day trial, a jury found Chappell guilty of conspiring to launder money and conspiring to distribute and possess with intent to distribute a controlled substance. On day one, Chappell's counsel asked the district court to drug test Leslee Ball, an unindicted coconspirator and expected government witness. Chappell's counsel believed that Ball "continu[ed] to use pretty significant narcotics" and alleged that "she had a drug overdose about three or four days ago." The district court declined to drug test her, but stated it planned to assess her competence to testify, state of mind, and sobriety by listening to her testimony. It also reminded Chappell's counsel that he could cross-examine her.

On day three, Ball testified. Chappell's counsel and the district court asked about her substance use. Ball told the jury that she received treatment for alcoholism two years before trial but eventually relapsed. She also testified about sporadic methamphetamine use, starting years before trial, but described herself as "more of a drinker" than a methamphetamine user. No one asked her about any recent substance use in the weeks, days, or hours before she testified. After the district court asked its own questions, both parties declined a second chance to question Ball.

While in custody before sentencing, Chappell spoke to Ball multiple times. In one recorded call, the pair discussed a conversation between Ball and the government about a drug test. Soon after, Ball allegedly contacted Chappell's

---

[1]The Honorable Daniel L. Hovland, then Chief Judge, now United States District Judge for the District of North Dakota.

counsel, stating that: (1) before testifying, she told the government that she could not pass a drug test; and (2) she testified against Chappell while drunk and high.

Based on those revelations, Chappell moved for a new trial and asserted that the government violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by withholding this information. In support, he submitted e-mails and his calls with Ball. He did not submit a verified statement from Ball.

The district court concluded that it lacked new evidence to justify a new trial.[2] While crediting the recorded calls as supporting-but-inconclusive evidence, the district court explained this evidence could only impeach Ball, not bar her testimony. Additionally, the district court "did not detect any impairment" during her testimony. And it considered it "highly unlikely that . . . Ball's alleged impairment" would lead to an acquittal given the "overwhelming" evidence from five other cooperating witnesses.

The district court also rejected alleged constitutional violations under *Brady* or *Giglio v. United States*, 405 U.S. 150, 153 (1972), by noting that Chappell's counsel alerted the court and the government to Ball's alleged recent overdose but asked no on-the-stand questions about her recent substance use.

At sentencing, Chappell asked for a fifty-percent downward variance for diagnosed-but-untreated physical pain caused by broken metal hardware in his neck. Doctors had told Chappell that he needed significant invasive surgery and referred him to the Mayo Clinic. The district court did not vary downward as it sentenced Chappell to serve concurrent 360 and 240-month sentences. The district court planned to strongly encourage the Bureau of Prisons to place Chappell at a federal medical center, preferably near the Mayo Clinic.

---

[2]The district court did not hold an evidentiary hearing because no one knew where to find Ball.

## II.  Discussion

Chappell anchors the appeal of his conviction to an alleged but unproven lie. To grant relief, we need more.  The record leaves us with no room to reverse his sentence, either.

### A.  New Trial

Chappell asks for a new trial because Ball allegedly lied about recent substance use and testified while under the influence of those substances.  We review the denial of Chappell's motion for a clear abuse of discretion.  *United States v. Baker*, 479 F.3d 574, 577 (8th Cir. 2007).  A district court may vacate a conviction based on newly discovered evidence.  Fed. R. Crim. P. 33(b)(1).  To receive a new trial, the moving party must show that: (1) the evidence was actually newly discovered since trial; (2) the moving party acted diligently; (3) the newly discovered evidence is neither merely cumulative nor impeaching; (4) the newly discovered evidence is material to the issues involved; and (5) it is probable that the newly discovered evidence would produce an acquittal.  *United States v. Shumaker*, 866 F.3d 956, 961 (8th Cir. 2017).

Chappell's newly-discovered-evidence challenge fails because he cannot satisfy most, if not all, of the elements that he must to receive a new trial.

At the outset, his appellate brief cited trial testimony to show that Ball lied on the stand.  But during oral argument, counsel conceded that the cited testimony came not from Ball, but from a different witness.[3]  A review of the trial testimony—which

---

[3]That concession also defeats any entitlement to a new trial based on newly discovered evidence under the theory that the government knowingly used perjured testimony to convict Chappell.  *Cf. United States v. Lewis*, 976 F.3d 787, 797 (8th Cir. 2020) (recognizing that for a conviction to be set aside, the government must have known it was using perjured testimony).

includes no question about Ball's recent or near-trial drug or alcohol use—disproves the argument that Ball lied on the stand about recent or near-trial drug or alcohol use. Thus, Chappell's challenge, to the extent that it relies on Ball's purportedly perjured testimony, lacks merit.

Then, we turn to the argument that Chappell should receive a new trial based on Ball's post-trial revelation that she testified while drunk and high. First, we question whether Chappell has presented any evidence that would qualify as "new evidence." *United States v. Hill*, 737 F.3d 683, 687 (10th Cir. 2013) ("Implicit in a claim of newly discovered evidence is that there is new *evidence*—that is, material that is admissible at trial.") (emphasis in original). Ball's unverified allegations about her impairment (including her conversation with the government), as relayed through Chappell's counsel or through the recorded phone calls, seem unlikely to be admissible at trial. *E.g., id.; see also United States v. Chapman*, 851 F.3d 363, 382 (5th Cir. 2017) (rejecting "an un-notarized written declaration by [defendant's] counsel restating what [the alleged gun owner] had revealed to counsel" because "[s]uch representations from defense counsel repeating statements that [the alleged gun owner] had made to counsel are inadmissible hearsay and a motion for new trial may not be based on inadmissible evidence.") (internal citation and quotation marks omitted). To be clear, this does not mean that a criminal defendant can never use a government witness's post-trial recorded perjury admissions to seek Rule 33(b) relief.

But even if we assume that Chappell meets the first element, he cannot satisfy the other four. He cannot show diligence. His drug-test request cannot explain away his counsel's failure to ask a sworn-in Ball about recent substance use despite receiving an additional chance to do so.

Further, Chappell's "newly discovered evidence only impeached." *United States v. Lewis*, 976 F.3d 787, 795 (8th Cir. 2020). According to Chappell, the newly discovered evidence could have challenged Ball's competency to testify and her testimony's admissibility. *See* Fed. R. Evid. 601; Fed. R. Evid. 403. But Chappell

fails to negate Ball's presumed competency to testify. *See* Fed. R. Evid. 601 ("Every person is competent to be a witness unless these rules provide otherwise."); *see also United States v. Hyson*, 721 F.2d 856, 864 (1st Cir. 1983) ("There is no provision in the rules for the exclusion of testimony because a witness is mentally incompetent."). Bare assertions cannot show incompetency, especially when coupled with Chappell's two chances to question Ball at trial. *See United States v. Skorniak*, 59 F.3d 750, 755 (8th Cir. 1995) (no abuse of discretion in allowing testimony when defendant could cross-examine witness about his history of mental health complications and substance use). And the record does not undermine the district court's finding that Ball lacked an impairment when she testified. Chappell's argument also fails because it rests on the unsupported perjury contention.

Finally, "[b]ecause the newly discovered evidence only impeached, it was not material." *Lewis*, 976 F.3d at 795. Nor was it probable that an acquittal would flow from that evidence. *See id.* Without any support, Chappell characterizes Ball's testimony as "the critical lynch-pin of the [g]overnment's case" and as weightier than the testimony of the other five government witnesses. After carefully reviewing the record, we agree with the district court that the evidence of guilt—even without Ball's testimony—was "overwhelming and compelling." Thus, even if Chappell had blocked Ball's testimony, an acquittal seems unlikely.

Without satisfying all new-trial elements, we conclude that the district court did not abuse its discretion in denying a new trial.

## B. *Brady*

We review denials of constitutional claims de novo. *United States v. Dones-Vargas*, 936 F.3d 720, 722 (8th Cir. 2019). Under the Due Process Clause of the Fifth Amendment to the United States Constitution, the government must disclose to the accused favorable evidence that is material to guilt, punishment, or the credibility of a witness. *Id.* (citing *Brady*, 373 U.S. at 87 (guilt and punishment evidence), and *Giglio*, 405 U.S. at 154 (witness credibility)). "To establish a due

process violation, a defendant must show that the evidence in question was favorable to him, that the government suppressed the evidence, and that the evidence was material." *Dones-Vargas*, 936 F.3d at 722.

Generally, "[e]vidence is material when there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)). A "'reasonable probability' of a different result" exists when "the nondisclosure 'undermines confidence in the outcome of the trial.'" *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)). To decide if impeachment evidence is "material," we examine the record as a whole because "[t]he relative strengths of the prosecution's case and the impeachment value of the undisclosed evidence bear on whether disclosure in time for use at trial would have made a difference." *Id.*

Even if the government "conceal[ed]" Ball's "mental state," Chappell cannot show that such evidence counts as "material" impeachment evidence. In *Dones-Vargas*, we upheld a denial of a *Brady* and *Giglio* challenge to undisclosed paid-witness testimony because the government's case "did not hinge" on that evidence when other witnesses testified to the same or similar facts. 936 F.3d at 722–23. Likewise, the government's case against Chappell "did not hinge" on Ball's testimony (*id.*), when, as the district court noted, five other witnesses presented "overwhelming and compelling" testimony against Chappell. Accordingly, we conclude that Chappell cannot establish "materiality." In turn, we conclude that the district court did not abuse its discretion in deciding against a *Brady* violation.

## C. Sentencing

"We review the denial of a motion for downward variance by reviewing the sentence for reasonableness, applying a deferential abuse-of-discretion standard." *United States v. Angeles-Moctezuma*, 927 F.3d 1033, 1037 (8th Cir. 2019). A sentencing court abuses its discretion and imposes an unreasonable sentence by, among other things, failing to consider a relevant sentencing factor that should have

received significant weight. *United States v. Mousseau*, 517 F.3d 1044, 1048 (8th Cir. 2008). It must make an individualized assessment of the appropriate sentence under the facts presented, and it must consider the factors set out in 18 U.S.C. § 3553(a). *United States v. Duke*, 932 F.3d 1056, 1062 (8th Cir. 2019).

After reviewing the briefs and presentence investigation report, as well as the parties' arguments, the district court decided that the United States Sentencing Guidelines set out a sufficient-but-not-greater-than-necessary sentence. In denying the downward variance, the district court: (1) made an individualized assessment under the facts presented; (2) considered the § 3553 factors (including Chappell's medical condition); and (3) gave a reasoned basis for exercising its judgment. *Id.* at 1061. Additionally, the specific and strong recommendation for a medical-facility placement confirms that the district court considered Chappell's medical condition, even if it did not reduce his sentence on that basis. Chappell fails to show that the district court abused its discretion or imposed an unreasonable sentence.

The judgment of the district court is affirmed.

COLLOTON, Circuit Judge, concurring in the judgment.

I do not share the majority's apparent doubt that a trial witness's post-trial recorded admissions that she used drugs and drank alcohol shortly before testifying would be new evidence for purposes of Federal Rule of Criminal Procedure 33. When a witness's post-trial statements could be used to impeach the witness's trial testimony, they would be admissible through cross-examination of the witness. Where, as here, the new evidence would be used for impeachment purposes, it often will not be material, and a new trial will not be warranted. *E.g.*, *United States v. Bohmont*, 413 F. App'x 946, 957-58 (8th Cir. 2011) (per curiam) (post-trial discovery that prosecution witness "submitted a methamphetamine-positive urine sample on the day he testified at trial" did not justify a new trial because "[a]t most, this new evidence is cumulative impeachment evidence"); *United States v. Holmes*, 421 F.3d 683, 688 (8th Cir. 2005) (affirming denial of new trial where proffered

hearsay affidavit would have had "negligible" value if "used to impeach" a witness's testimony at a new trial); *United States v. L'Donna*, 179 F.3d 626, 629 (8th Cir. 1999) (new evidence of witness's perjury did not warrant new trial where evidence of guilt was great, and "there was no foreseeable likelihood that any possible further impeachment value" from new evidence would have affected the verdict); *United States v. Kraemer*, 810 F.2d 173, 177 (8th Cir. 1987) (per curiam) (new evidence did not warrant new trial because "[a]t a second trial, if Michaeloff's testimony were thoroughly impeached, Kraemer probably still would be convicted."). But lack of materiality should not be confused with lack of new evidence, for it is possible that new evidence affecting a witness's credibility in a particular case could be so damaging to the prosecution that a new trial would be required. *See United States v. Wallach*, 935 F.2d 445, 458-59 (2d Cir. 1991) (new evidence that key witness committed perjury required new trial).

There are ample grounds to affirm the district court's ruling in this case based on lack of materiality and diligence, and I concur in the majority's reasoning on those points. I also agree that there was no violation of the Due Process Clause and that the court imposed a reasonable sentence.

_____