# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2523
_____

United States of America

*Plaintiff - Appellee*

v.

Christina M. Richey

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: March 25, 2014
Filed: July 14, 2014

_____

Before RILEY, Chief Judge, GRUENDER and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

After Christina Richey admitted to violating one condition of her supervised release, the district court[1] revoked Richey's supervised release. The district court imposed a 24-month prison sentence, in excess of the 6 to 12-month advisory

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

guidelines range, based on Richey's numerous prior violations. In passing, the district court referenced "all of the reasons set out in the adjustment report and recommendation," which Richey asserts included unproven, disputed facts. At the hearing, Richey, through counsel, objected on the ground that "the recommendation is predicated upon conduct that we have not admitted to, nor which has been proven by the government," and now appeals. Concluding the district court did not rely on disputed factual evidence in reaching an appropriate revocation sentence under 18 U.S.C. § 3583(e)(3), we affirm.

## I.    BACKGROUND

The government initially alleged Richey violated four conditions of her supervised release by (1) committing another crime; (2) failing to report to the probation office for a scheduled urinalysis; (3) lying to her probation officer; and (4) associating with a felon without receiving permission from her probation officer. Richey denied the first three allegations, but admitted the fourth. The government then moved to dismiss the first three allegations without prejudice, choosing not to offer any evidence. The district court granted the motion.

Associating with a felon was not Richey's first violation. Less than a year earlier, Richey admittedly violated three other conditions of her supervised release:

1.    Defendant shall not commit another federal, state, or local crime;

2.    Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer; and

3.    Defendant shall report to the Probation Officer.

She violated the first of these conditions on May 1, 2012, when she drove without a license—a Class III misdemeanor in Nebraska—and without wearing a seatbelt, which is an infraction in Nebraska. Richey pled guilty to these charges on June 6, 2012. By

failing to report the citation she received for these offenses, she violated the second condition. And she violated the third condition by failing to submit monthly reports to her probation officer in June, July, and August 2012.

Based on Richey's troubling history on supervised release, the government asserted "that a term of 24 months with no supervision to follow is a reasonably calculated sentence." Richey's counsel requested a custodial sentence of time served (approximately 2 months). The district court recognized "the particular offense to which [Richey] admitted may not be as serious as those that we often see," but found "her general history of conduct on supervised release [to be] very serious and very troubling." The district court opined that Richey's "history of adjustment on supervised release has been abysmal" and Richey "had continued, repeated, consistent violations." Then, referencing "all the reasons set out in the adjustment report," the district court sentenced Richey to 24 months in prison.

Richey's counsel objected "on the grounds that [the sentence] d[id] not comply with the 3553(a) factors" because "there are facts contained in the adjustment report which are related to allegations that [Richey] ha[d] not admitted to . . . . [and] which ha[d not] been proven by the government." The district court acknowledged the objection and adjourned the hearing. Richey now appeals.[2]

## II.    DISCUSSION

A revocation of supervised release ordinarily presents our court with two questions on appeal. First, did the district court err in revoking supervised release? That question calls for abuse of discretion review, while "the factual determinations underlying the court's decision to revoke [receive] clear error" review. United States v. Smith, 576 F.3d 513, 515 (8th Cir. 2009).

---

[2]Our court has appellate jurisdiction under 28 U.S.C. § 1291.

Second, did the district court err in imposing a particular revocation sentence? Because a sentence imposed upon revocation of supervised release is not a new punishment but rather "relate[s] to the *original* offense," Johnson v. United States, 529 U.S. 694, 701 (2000) (emphasis added), we review that question "under the *same* 'deferential abuse-of-discretion' standard that applies to *initial* sentencing proceedings," United States v. Young, 640 F.3d 846, 848 (8th Cir. 2011) (per curiam) (emphasis added). The Supreme Court enunciated this familiar standard in Gall v. United States, 552 U.S. 38, 51 (2007), which requires us first to "ensure that the district court committed no significant procedural error" and second, if there is no procedural error, to ensure the sentence was "substantive[ly] reasonable[]." In this regard, the only difference between an initial sentence and a revocation sentence is that at a revocation hearing the district court need consider only the § 3553(a) factors specifically listed in 18 U.S.C. § 3583(e).

The government's brief focuses on the first question (the decision to revoke Richey's supervised release) and the second part of the second question (the substantive reasonableness of the revocation sentence). But Richey does not actually raise these issues. Instead, Richey bases her appeal on the first part of the second question, asserting the district court *procedurally* erred in imposing the 24-month revocation sentence on the basis of disputed, unproven allegations.

### A.     Legal Question

Richey's appeal is built on a strong legal foundation. It is well established that a district court commits procedural error under Gall by basing a sentence on unproven, disputed allegations rather than facts. See, e.g., Gall, 552 U.S. at 50 (requiring district courts to "make an individualized assessment based on the *facts* presented" (emphasis added)). Gall expressly prohibits district courts from "selecting a sentence based on *clearly erroneous facts*," id. at 51 (emphasis added), and a district court finding "*without record support* [is] clearly erroneous," United States v. Hudson, 129 F.3d 994, 995 (8th Cir. 1997) (per curiam) (emphasis added).

For this reason, when a defendant specifically disputes facts contained in a report prepared by the probation office "'and the relevant responsive evidence has not already been produced at trial, *the government must present evidence at the sentencing hearing to prove the existence of the disputed facts*.'" United States v. Davis, 583 F.3d 1081, 1095 (8th Cir. 2009) (emphasis added) (quoting United States v. Wintermute, 443 F.3d 993, 1005 (8th Cir. 2006)). "'If the sentencing court chooses to make a finding with respect to [any] disputed facts, it must do so *on the basis of evidence*, and not the presentence report.'"[3] United States v. Morehead, 375 F.3d 677, 679 (8th Cir. 2004) (emphasis added) (quoting United States v. Greene, 41 F.3d 383,

---

[3]Federal Rule of Criminal Procedure 32 generally requires a report "before [the district court] *imposes sentence*" unless "another statute requires otherwise" or "the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record." Fed. R. Crim. P. 32(c)(1)(A) (emphasis added).

Recognizing "Rules 32 and 32.1 are 'complementing rather than conflicting,'" we have held "Rule 32 applies to sentencing upon revocation of supervised release when the court imposes a new sentence based on conduct that occurred during supervised release." United States v. Patterson, 128 F.3d 1259, 1261 (8th Cir. 1997) (per curiam) (quoting United States v. Carper, 24 F.3d 1157, 1160 (9th Cir. 1994)); see also, e.g., United States v. Whitlock, 639 F.3d 935, 937 (9th Cir. 2011) ("[L]ike post-conviction sentencing recommendations, post-revocation sentencing recommendations must be disclosed unless the district court directs otherwise '[b]y local rule or by order in a case.'" (alteration in original) (quoting Fed. R. Crim. P. 32(e)(3)); United States v. Plotts, 359 F.3d 247, 250 (3d Cir. 2004) (extending Rule 32's allocution requirement to revocation sentencing); United States v. Reyna, 358 F.3d 344, 347 (5th Cir. 2004) (en banc) (same). But see, e.g., United States v. Pelensky, 129 F.3d 63, 69 (2d Cir. 1997) ("Nothing in Rule 32 suggests that an additional presentence report must be prepared at th[e revocation] stage.").

Does Patterson's logic mean a revocation "sentence" is "impose[d]" within the meaning of Rule 32, such that an additional report must be prepared and disclosed with an opportunity to object? We need not answer this difficult question here, so we leave it open for a future case.

386 (8th Cir. 1994) (per curiam)). "A 'presentence report is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact.'" United States v. Wise, 976 F.2d 393, 404 (8th Cir. 1992) (en banc) (quoting United States v. Streeter, 907 F.2d 781, 791-92 (8th Cir. 1990)); see also, e.g., United States v. Gramling, 417 F.3d 891, 896 (8th Cir. 2005). To the extent a revocation sentence is based on disputed and uncorroborated factual allegations contained in an adjustment report, the sentence is procedurally erroneous under Gall.[4] See, e.g., Wise, 976 F.2d at 404.

The government's disagreement is apparently[5] based on United States v. Carr, 66 F.3d 981 (8th Cir. 1995) (per curiam), where we said "[a] *due process violation* is established only if the defendant shows that the district court relied on materially false information and that the information is demonstrably the basis for the challenged sentence," id. at 983 (emphasis added). As should be evident from our added emphasis, this statement in Carr has nothing to do with the statutory and procedural requirements interpreted by the Supreme Court in Gall—nor could our panel opinion in Carr survive Gall if the two cases were inconsistent. Instead, this statement in Carr solely addressed a constitutional sentencing requirement developed in a long line of cases stretching back to Townsend v. Burke, 334 U.S. 736, 741 (1948), where the Supreme Court held it "is inconsistent with due process of law" for a defendant to be "sentenced on the basis of assumptions . . . which [a]re materially untrue."

---

[4]Because 18 U.S.C. § 3583(e) permits a district court to impose a revocation sentence only "after considering [specified § 3553(a)] factors," and the district court has the same sentencing discretion at the initial sentencing and revocation sentencing, under Gall, a district court clearly may rely on *undisputed* reports at the revocation sentencing in the same way as at the initial sentencing. See Johnson, 529 U.S. at 701; Young, 640 F.3d at 848.

[5]We say "apparently" because the government's brief does not cite cases on this issue.

In Carr, the defendant "challenge[d] the validity of his sentence on *due process grounds*," arguing the sentencing "court acted in violation of his *Fifth Amendment* rights." 66 F.3d at 983 (emphasis added). Relying on our cases interpreting Townsend, see, e.g., United States v. Wright, 799 F.2d 423, 426 (8th Cir. 1986), we rejected this constitutional challenge because the disputed facts were "neither manifestly false nor the demonstrable basis for the district court's sentence," Carr, 66 F.3d at 983. Our opinion in Carr did not address the government's statutory and procedural burden to prove disputed factual allegations contained in a probation officer's sentencing report because the question was not presented. To read Carr otherwise would not just create an untenable inconsistency with Gall, but an unacceptable departure from our earlier *en banc* opinion in Wise, where we squarely held a "district court erred . . . in announcing that it would assume that the factual statements in [the defendant's] presentence report were true and that it was defense counsel's burden to prove that they were not." Wise, 976 F.2d at 404.

Harmonizing Carr with Gall and Wise provides the answer to the legal question at issue: as a statutory and procedural matter, a revocation sentence may not be based on disputed, unproven allegations in the probation officer's reports.[6]

---

[6]Quoting Mellouli v. Holder, 719 F.3d 995, 1002 (8th Cir. 2013), the concurrence calls this question "'academic.'" Post at 11. Yet it is the threshold issue in the case, and as Mellouli itself shows (certiorari granted, ___ U.S. ___, No. 13-1034, 2014 WL 796807 (June 30, 2014)) some important questions are less academic than they might at first appear.

This threshold question undoubtedly is of great importance to defendants in our circuit facing revocation of supervised release, many of whom have little incentive to appeal—even if the error occurs—because the resulting sentence often is shorter than the length of an appeal. There is also reason to fear the error may pass undetected because some defendants in our circuit apparently do not see the adjustment report in their case. See post at 12 & n.10; cf., e.g., United States v. Oglesby, 52 F. App'x 712, 715 (6th Cir. 2002) (unpublished per curiam) (noting the defendant "testified that he had read the supervised release revocation report, and that he had reviewed the report

-7-

## B. Factual Question

Although Richey has the law right, her appeal collapses on a weak factual foundation. According to Richey, "the district court unambiguously considered unproven and expressly denied conduct in arriving at its sentence." Richey points to the district court's reference to "all of the reasons set out in the adjustment report and recommendation." The adjustment report listed disputed facts related to three violations Richey contested and the government declined to prove. In Richey's view, this means the district court based her sentence on those disputed facts. Objectively viewing the record as a whole, we do not accept Richey's subjective interpretation of the district court's sentencing rationale.

The district court expressly dismissed the disputed allegations shortly before imposing the sentence. To the extent the district court relied on the "recommendation" and "reasons" in the adjustment report, it is clear from reading the sentencing transcript and the report itself that the district court's reference was to the section of the report titled "Recommendation/Justification," not the other parts of the report summarizing disputed facts, because that is the only section containing a "recommendation" and supporting "reasons." The probation officer's primary reason

with his attorney").

In light of our "well-established . . . supervisory authority," <u>Starr v. Mandanici</u>, 152 F.3d 741, 750 (8th Cir.1998), "to mandate 'procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution,'" <u>Thomas v. Arn</u>, 474 U.S. 140, 146-47 (1985) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973)), we think it imminently appropriate to clarify that district courts in our circuit may not deprive individuals of conditional liberty on the basis of unreliable—perhaps even undisclosed—allegations. <u>See</u>, <u>e.g.</u>, <u>United States v. Gonzalez</u>, 529 F.3d 94, 98 (2d Cir. 2008) (exercising supervisory authority "in conformity with Rules 32 and 32.1" to require vacation and resentencing when a defendant is deprived "of an opportunity for presentence allocution" at a revocation sentencing).

-8-

for recommending "two years in custody" was that "Richey has demonstrated an unwillingness to comply with the conditions of supervision." This reason is indisputably valid based on Richey's numerous admitted violations, including repeated refusals to file monthly reports with her probation officer. To be sure, the probation officer briefly referenced a disputed firearm charge, but the officer immediately followed that reference with "*Nonetheless*, Ms. Richey has continued to engage in behaviors which pose a danger to herself and others." (Emphasis added). In other words, the probation officer meant that *regardless* of the disputed firearm charge, Richey's conduct was dangerous "to herself and others."

This too is supported by the undisputed evidence of Richey's admitted prior violations. At argument, Richey's counsel sought to minimize these prior violations by claiming the most serious was "a failure to wear a seatbelt ticket."[7] Not so. Her most serious violation was the Class III misdemeanor of driving without a license, which Richey's counsel failed to mention at argument. Courts across the United States recognize the significant danger unlicensed drivers pose to themselves and the public. See White v. Walker, 950 F.2d 972, 978 (5th Cir. 1991) (per curiam) ("By driving unlicensed [an individual] had violated the law and had subjected himself, his friends, and the motorists and pedestrians of [his community] to a risk of grave bodily injury."); see also, e.g., United States v. Montoya-Garcia, 522 F. App'x 790, 791-92 (11th Cir. 2013) (unpublished per curiam) (concluding the fact a defendant "twice pled guilty to driving without a license" partially supported "finding that [he] posed a risk to the public of committing further crimes"); United States v. Lopez, 401 F. App'x 49, 52 (6th Cir. 2010) (unpublished) (recognizing that "driving without a

---

[7]But see, e.g., Geier v. Am. Honda Motor Co., 529 U.S. 861, 877 (2000) (recognizing people run "enormous and unnecessary risks . . . by not buckling up"). "[I]f used, seatbelts unquestionably would save many thousands of lives and would prevent tens of thousands of crippling injuries." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52 (1983).

license . . . made [a defendant] a risk to the public"). Noting statistical research which supports these courts' public safety concerns,[8] we cannot say the district court in this case clearly erred in finding Richey's unlicensed driving endangered herself and the public.

It is clear from the record as a whole that the district court considered the § 3553(a) factors listed in § 3583(e) and based Richey's sentence on undisputed facts. The district court found Richey left prison sooner than she was "ready to get out" and before she had "made the adjustments and corrections in [her] behavior that need[ed] to be made." This finding is supported by Richey's history of *admitted* and *repeated* violations of supervised release conditions. Based solely on Richey's pattern of violations (driving without a license, repeatedly failing to report to her parole officer, and associating with a felon), the district court was justified in finding Richey's "history of adjustment on supervised release has been abysmal."

Although the district court could have offered a more detailed and precise explanation of the reference to the "reasons" in the adjustment report, or omitted the

---

[8]See, e.g., Sukhvir S. Brar, Cal. Dep't of Motor Vehicles, No. RSS-12-238, Estimation of Fatal Crash Rates for Suspended/Revoked and Unlicensed Drivers in California v-vi (2012) (finding unlicensed drivers were more than twice as likely as validly licensed drivers to be involved in a fatal crash in California); Lindsay I. Griffin III and Sandra DeLaZerda, AAA Foundation for Traffic Safety, Unlicensed to Kill 7, 34 (2000), available at https://www.aaafoundation.org/sites/default/files/ unlicensed2kill.PDF (reporting "unlicensed drivers may be 4.9 times more likely to be involved in fatal crashes than valid license holders" and finding "20 percent of all fatal crashes in the United States—one fatal crash in five—involves at least one driver who is unlicensed, driving on an invalid license, or of unknown license status").

reference, we detect no procedural error under <u>Gall</u> after considering the whole sentencing record.[9]

## III.  CONCLUSION

Because Richey fails to show the district court erred by relying on unproven, disputed allegations in the adjustment report, we affirm the 24-month revocation sentence.

GRUENDER, Circuit Judge, concurring in the judgment.

Although I concur in the judgment of the court affirming Richey's sentence, I write separately because I consider the court's discussion in Part II.A to be unnecessary to the disposition of this case.  The court's effort to "harmoniz[e] *Carr* with *Gall* and *Wise*," *ante* at 7, in a case that does not require it violates "[t]he general rule that we do not decide academic questions," *Mellouli v. Holder*, 719 F.3d 995, 1002 (8th Cir. 2013).  I simply would assume that relying on unproven supervised-release violations when imposing a revocation sentence constitutes procedural error under *Gall* and then hold that the district court committed no such error for the reasons stated by the court in Part II.B.  This approach avoids the substantial and unbriefed "threshold question" raised by the court in footnote 3 of whether *Gall* and Federal Rule of Criminal Procedure 32 require the same procedures for an "adjustment report" prepared for supervised-release revocation sentencing as they do for a presentence investigation report ("PSR") prepared for initial sentencing.  *Ante* at 5 n.3.

---

[9]This conclusion necessarily dooms any constitutional due process argument Richey tries to raise under the stricter <u>Townsend</u> standard.  <u>See</u> <u>Townsend</u>, 334 U.S. at 741.

Relying on *United States v. Patterson*, 128 F.3d 1259, 1261 (8th Cir. 1997), a case that extended Rule 32's allocution procedure to supervised-release sentencing proceedings, the court poses the rhetorical question of whether "a revocation 'sentence' is 'impose[d]' within the meaning of Rule 32, such that an additional report must be prepared and disclosed with an opportunity to object?" *Ante* at 5, n.3.  The court purports to leave this question "open for a future case." *Id.*  But what the court raises as a rhetorical question in footnote 3, it effectively answers in footnote 6 when it "clarif[ies] that district courts in our circuit may not deprive individuals of conditional liberty on the basis of unreliable—perhaps even undisclosed—allegations." *Ante* at 8, n.6.  Indeed, the practical effect of the court's opinion is to resolve this issue by applying initial-sentencing Rule 32 PSR procedures to adjustment reports used in supervised-release sentencing proceedings, which are generally governed by Rule 32.1.  That is, by harmonizing *Carr* with *Gall* and *Wise* to conclude that "a revocation sentence may not be based on disputed, unproven allegations in the probation officer's reports," *ante* at 7, the court effectively requires that defendants and their attorneys (and perhaps even the Government) be allowed to review adjustment reports (which, as I understand, ordinarily are not disclosed to the parties[10]), object to disputed facts contained in them, and require the Government to "prove up" those facts.  The court justifies reaching this unnecessary question based upon its "fear [that] the error may pass undetected because some defendants in our circuit apparently do not see the adjustment report in their case." *Ante* at 8, n.6.  After this decision, however, what defense counsel would not demand, as Richey's counsel did, disclosure of the adjustment report and then an opportunity to object to it?

---

[10]Richey states in her brief that adjustment reports "do not appear as a docket entry and cannot be accessed from PACER, even by the parties."  The only reason the adjustment report became an issue in this case is that the district court disclosed it at the request of Richey's counsel.

Although the court might well be reaching the correct result, without briefing and argument on the issue, I am not convinced of it—particularly in light of the Second Circuit's refusal to extend Rule 32's PSR formalities to supervised-release sentencing proceedings. *See United States v. Pelensky*, 129 F.3d 63, 69 (2d Cir. 1997) ("Although it is customary in supervised release proceedings for the probation officer to submit to the judge a memorandum regarding the status of the defendant and the subject of the hearing . . . there is no requirement that such communications with the judge meet any particular standard of formality, much less those of a full-fledged presentence report."). Unlike Rule 32, which provides a detailed process for disclosure of and objections to PSRs, Rule 32.1 has no such procedural scheme. But even assuming that a revocation sentence is "'impose[d]' within the meaning of Rule 32, such that an additional report must be prepared and disclosed with an opportunity to object," *ante* at 5 n.3, this requirement may well be met by the probation office's filing of a petition for warrant or summons for offender under supervision. Such petitions, including the one filed in this case, enumerate the alleged violations of supervised release—allowing the defendant to review the allegations, dispute them, and put the Government to its burden to prove disputed violations (or dismiss them) in order to ensure that the district court does not rely on unproven allegations of supervised-release violations. If the petition thus serves the purposes of the PSR, perhaps the adjustment report is more akin to the probation office's sentence recommendation for initial sentencing, which is not required by Rule 32 to be disclosed to the parties. *See* Fed. R. Crim. P. 32(e)(3) ("[T]he court may direct the probation officer not to disclose to anyone other than the court the officer's recommendation on the sentence."). In any event, as it is unnecessary to decide this case, I would avoid this difficult question.

For these reasons, I concur in the judgment of the court.

_____