# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-4334

_____

United States of America

*Plaintiff - Appellee*

v.

Candice A. Davis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2017
Filed: November 16, 2017

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Candice A. Davis pled guilty to wire fraud, use of unauthorized access devices, and aggravated identity theft in violation of 18 U.S.C. §§ 1343, 1029(a)(2), 1029(b)(1), 1029(c)(1)(A)(i), and 1028A(a)(1). The district court[1] sentenced her to

_____

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

75 months' imprisonment. Davis appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

In her plea agreement, Davis stipulated: "Beginning on or about November 1, 2013 and continuing to on or about December 1, 2015, in the Eastern District of Missouri," Davis and her co-defendant, Stacey Wilson, "recruited individuals to open checking accounts at U.S. Bank with nominal amounts of money." "They also recruited other individuals who had existing checking accounts with debit cards at other federally insured institutions." In total, Davis and Wilson "recruited more than 15 individuals to open accounts" or "provide their own bank account information." The recruited individuals provided Davis and Wilson "with their debit cards and checks issued on their accounts." Using those checks (and other stolen ones), Davis and Wilson drafted and deposited "checks in amounts from $195.00 to $2,300.00." They then withdrew the deposited funds through ATMs, counter withdrawals, and debit card purchases. "As a result of the scheme, Wilson, Davis, and others obtained, and attempted to obtain, more than $79,000.00 in funds . . . between September 1, 2013 and December 1, 2015."

At sentencing, Davis objected to the presentence investigation report (PSR) and the court's enhancements. She also requested a reduction for acceptance of responsibility.

I.

Davis contends the district court erred in overruling her objections to the PSR. "For purposes of sentencing," this court reviews factual findings for "clear error, applying the preponderance-of-the-evidence standard." *United States v. Atterberry*, 775 F.3d 1085, 1090 (8th Cir. 2015). A district court cannot base a sentence upon disputed, unproven allegations in the PSR. *See United States v. Richey*, 758 F.3d 999, 1002 (8th Cir. 2014). "A presentence report is not evidence and is not a legally

sufficient basis for making findings on contested issues of *material* fact." ***Id.*** (emphasis added) (internal quotation marks omitted).

In her written objections to the PSR, Davis contested the statement she recruited more than 50 participants. The government then produced a list of 51 individuals who provided their account information to Davis and Wilson. At sentencing, Davis did not raise the objection, but she does now. This court need not determine whether she properly preserved the objection because the issue is not material to any sentencing enhancement. ***United States v. Mitchell***, 825 F.3d 422, 425 (8th Cir. 2016) (holding the district court must hold a hearing "when a defendant disputes material facts in his PSR").

Three sections of the PSR reference "fifty individuals" or "fifty participants":

13. As part of the fraudulent scheme, Stacey Wilson and **Candice A. Davis** recruited approximately fifty individuals to open checking and savings accounts with U.S. Bank using fraudulent and stolen checks for the initial deposits. Investigation determined one of the victims was mentally disabled (B.J.) and several others were homeless. **Wilson** and **Davis** drove the recruited individuals to onsite and instore U.S. Bank branches as these locations offered instant debit cards and checks. All debit cards and checks were subsequently provided to the **defendants**. Investigation determined the recruited individuals received a minimal payment for setting up the accounts and depositing the fraudulent or stolen checks into the accounts for the **defendants**.

40. **Specific Offense Characteristics**: As the offense involved sophisticated means, two-levels are added. USSG §2B1.1(b)(10)(C). Specifically, the defendants recruited more than fifty participants, was repeated five times, and occurred for more than one year.

42. **Adjustment for Role in the Offense**: The defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive;

therefore, three levels are added. USSG §3B1.1(b). In the instant offense, Stacey Wilson brought Candice into the criminal organization. Throughout the offense, Davis helped Wilson recruit approximately fifty individuals to open checking and savings accounts with U.S. Bank accounts. After the accounts were created, the defendants deposited fraudulent and stolen checks into the bank accounts and withdrew the inflated funds prior to the accounts being closed. **[The defendant and government disagree[ ] [about] this enhancement].**

The reference to "fifty individuals" in paragraphs 13 and 42 is not material to the § 3B1.1(b) enhancement because the enhancement requires only that the defendant be an organizer or leader of a criminal activity that involves "five or more participants." Davis stipulated it involved 15 participants. The reference to "fifty participants" in paragraph 40 is not material to the § 2Bl.l(b)(10)(C) enhancement because Davis stipulated to the enhancement in the plea agreement:

> The parties agree that 2 levels should be added pursuant to Section 2Bl.l(b)(10)(C) because the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means.

The PSR's statement that the scheme involved more than 50 participants was not material to any enhancement. Any error in overruling Davis's objection was therefore harmless.

Davis also objects to the finding that her conduct began before 2015. Agent Anne Kriedt, the government's witness and a U.S. postal inspector, testified about Davis's involvement in 2013 and 2014:

> Q. Okay. Let me first turn your attention to some of the original investigation, however. In the original investigation back in — for conduct that had occurred in 2013, did you have information of Ms. Davis' involvement at that time?

A. Yes.

Q. Could you, please, tell the Court about that?

A. Yes. Stacey Wilson was at a Schnuck's in Maryland Heights, Missouri, attempting to open a bank — or another account in somebody else's name. The police were called. And in the video surveillance, there's a female and a small child and Stacey Wilson all in the video. The police walk up and they — or Candice Davis identifies herself as Candice Davis and then they discover Stacey Wilson was posing as another person to open the account.

Q. Okay. So at the time that she was seen in Maryland Heights, there were no charges that were laid against Ms. Davis as a result of that conduct. Is that correct?

A. Correct.

Q. But she was with Mr. Wilson as he was using a name other than his own in order to open an account through which fraud would be generated.

A That's correct.

Q. And between 2013 and 2014, is there evidence of Ms. Davis being involved in some form or fashion in this conspiracy?

A. Yes.

Q. Could you please tell the Court about that?

A. Candice Davis is seen at an ATM drive-up at a US Bank depositing a check on a closed account, and she's in her vehicle that was used back in 2013.

Q. And this actually occurred on May 5th, 2014, at a Jennings US Bank branch drive-up. Is that correct?

A. Correct.

Q. And at that time she deposited a check in the amount of $305 into the account of someone with the initials of G.J. Is that correct?

A. Correct.

Q. And you were able to identify, through the assistance of US Bank, that G.J.'s account was used — was opened in order to be used fraudulently. Is that correct?

A. Correct.

Q. And Ms. Davis was identified through surveillance photos. Is that correct?

A. Yes.

. . . .

Q. And between 2013 and 2014, other than the two occasions that you identified, was either Defendant identified with Stacey Wilson as he was conducting fraud or her vehicle was used as he was conducting the criminal activity?

A. That's correct.

Q. Is that correct in both cases or just one or the other?

A. Both cases.

Davis objects to the sufficiency of Agent Kriedt's testimony because she was not part of the investigation in 2013. However, as Agent Kriedt testified, when she became involved in 2015, she received all materials and reports since 2013. Her testimony shows she was familiar with the events beginning in 2013. *See United States v. Replogle*, 628 F.3d 1026, 1031 (8th Cir. 2011) (holding that a sentencing

court "may consider any information with sufficient indicia of reliability to support its probable accuracy"). The district court did not err in finding Davis was involved before 2015. ***United States v. Mohr***, 772 F.3d 1143, 1146 (8th Cir. 2014) ("A district court's findings regarding witness credibility are entitled to 'particularly great deference' and a district court's decision to credit a witness's testimony 'can almost never be a clear error unless there is extrinsic evidence that contradicts the witness's story.'"), *quoting* ***United States v. Wright***, 739 F.3d 1160, 1166-67 (8th Cir. 2014).

The district court properly overruled Davis's objections to the PSR.

## II.

Davis believes the district court erred in finding she was a manager or supervisor of a criminal activity involving five or more participants. This court reviews "a district court's factual findings regarding whether a leadership enhancement is warranted for clear error and its legal conclusions de novo." ***United States v. Musa***, 830 F.3d 786, 788 (8th Cir. 2016). The government must prove the applicability of the enhancement by a preponderance of the evidence. ***Id.***

"Section 3B1.1(b) of the Sentencing Guidelines provides a three-level enhancement '[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants.'" ***United States v. Mannings***, 850 F.3d 404, 409 (8th Cir. 2017), *quoting* **U.S.S.G. § 3B1.1(b)**. Applying the enhancement, the court considers:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

**U.S.S.G. § 3B1.1 cmt. n.4.** This court has "never construed the terms . . . so narrowly as to restrict application of the enhancement solely to the organizer who first instigated the criminal activity." *United States v. Irlmeier*, 750 F.3d 759, 764 (8th Cir. 2014). "[T]he defendant need not be the only leader or organizer, and the defendant need not lead or organize all of the participants." *Id.* In fact, this court has "defined the terms 'manager' and 'supervisor' quite liberally, holding that [a] defendant can be subject to this enhancement for having managed or supervised only one other participant in the criminal conspiracy." *Mannings*, 850 F.3d at 409 (internal quotation marks omitted). "The key factors in determining management or supervisory authority are control over participants and organization of the criminal activity." *Id.*

At sentencing, Agent Kriedt testified that she interviewed a witness B.J. who identified Davis as the person who recruited him into the scheme by offering to pay him for depositing checks. Davis contends the court should not have relied on this testimony because B.J. has the mental capacity of a second-grader and previously said Davis's coconspirator recruited him. Agent Kriedt acknowledged that B.J.'s mother said "he has the mental capacity of a second grader or a nine-year-old." However, Agent Kriedt testified that his "recitation of the facts" was not consistent with that of a second-grader. She also acknowledged that she originally thought B.J. was recruited by Wilson. But she testified that B.J. corrected this misunderstanding in their most recent conversation. This testimony was sufficient to show Davis exercised control over at least one participant. *See id.*; *United States v. Valencia*, 829 F.3d 1007, 1012 (8th Cir. 2016) (affirming enhancement where the defendant directed members of the organization during at least one drug shipment). Davis admitted the scheme involved more than 15 participants. The district court did not err in applying the three-level enhancement under § 3B1.1(b).

III.

Davis argues the district court erred in denying a two-level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1(a) provides for a two- level reduction if the defendant "clearly demonstrates acceptance of responsibility for [her] offense." **U.S.S.G. § 3E1.1(a)**. This court reviews the "denial of an acceptance of responsibility reduction for clear error and will reverse only if it is so clearly erroneous as to be without foundation." *United States v. Jensen*, 834 F.3d 895, 901 (8th Cir. 2016). "[A] defendant who enters a guilty plea is not entitled to credit for acceptance of responsibility as a matter of right." *United States v. Torres-Rivas*, 825 F.3d 483, 486 (8th Cir. 2016). "Because '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] . . . the determination of the sentencing judge is entitled to great deference on review.'" *United States v. Fischer*, 551 F.3d 751, 754 (8th Cir. 2008), *quoting Peters v. United States*, 464 F.3d 811, 812 (8th Cir. 2006). The defendant bears the burden of proving her entitlement to the reduction. **U.S.S.G. § 3E1.1, cmt. n.2.**

Davis denied much of the conduct relevant to her convictions. She claimed: (1) she was not involved in the criminal activity until 2015; (2) she did not recruit or direct anyone; (3) the offenses did not involve sophisticated means; and (4) she and her coconspirator did not recruit at least 50 individuals. The court found to the contrary. Given her multiple objections to the PSR, the district court did not err in denying a reduction for acceptance of responsibility. *See United States v. Mahone*, 688 F.3d 907, 911 (8th Cir. 2012) (affirming denial of § 3E1.1(a) enhancement where the defendant "enter[ed] a plea of guilty and admit[ted] what he needed to admit to get his plea accepted and did not go beyond that" and then later "argued and tried to explain [and] denied things that simply were true"); *United States v. Jones*, 539 F.3d 895, 897 (8th Cir. 2008) (affirming denial of enhancement where the district court found "frivolous denial[s] of relevant conduct"); *United States v. Erhart*, 415 F.3d 965, 971 (8th Cir. 2005) (holding that a "defendant is entitled to an acceptance

of responsibility reduction when the defendant has shown a recognition and affirmative acceptance of responsibility for relevant conduct").

\* \* \* \* \* \* \*

The judgment is affirmed.

_____